## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAYMOND HOLLOWAY, JR.,** | : | **CIVIL ACTION NO. 1:17-CV-81** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JEFFERSON B. SESSIONS, III,** | : | |
| **Attorney General of the United** | : | |
| **States, THOMAS E. BRANDON,** | : | |
| **Acting Director of the Bureau of** | : | |
| **Alcohol, Tobacco, Firearms and** | : | |
| **Explosives, CHRISTOPHER A.** | : | |
| **WRAY, Director of the Federal** | : | |
| **Bureau of Investigation, and the** | : | |
| **UNITED STATES OF AMERICA,**[1] | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Holloway brings this civil rights action seeking a declaration pursuant to the

Third Circuit Court of Appeals' recent decision in <u>Binderup v. Attorney General</u>,

836 F.3d 336, 339 (3d Cir. 2016) (*en banc*), <u>cert. denied</u> 137 S. Ct. 2323 (2017), that 18

U.S.C. § 922(g)(1) is unconstitutional as applied to him. The complaint names as

defendants the United States of America as well as Jefferson B. Sessions, Attorney

General of the United States; Thomas E. Brandon, Acting Director of the Bureau of

Alcohol, Tobacco, Firearms and Explosives; and Christopher A. Wray, Director of

---

[1] James B. Comey was Director of the Federal Bureau of Investigation when the instant action was commenced against him in his official capacity. On May 9, 2017, Andrew McCabe succeeded James B. Comey as Acting Director of the Federal Bureau of Investigation. On August 2, 2017, Christopher A. Wray succeeded Andrew McCabe as Director of the Federal Bureau of Investigation. Pursuant to Federal Rule of Civil Procedure 25(d), Christopher A. Wray is substituted as the defendant in this action. <u>See</u> FED. R. CIV. P. 25(d).

the Federal Bureau of Investigation (collectively "defendants" or "the government").  Before the court is Holloway's motion (Doc. 58) for summary judgment.  Also pending is defendants' motion (Doc. 60) to dismiss, or in the alternative, for summary judgment.

## I.    <u>Factual Background & Procedural History</u>[2]

A police officer initiated a traffic stop of Holloway's vehicle for speeding on December 28, 2002.  (Doc. 61-1 ¶¶ 7-9).  Holloway was subsequently arrested for suspected drunk driving.  (<u>Id.</u> ¶¶ 10-14).  Approximately one hour after his arrest, Holloway performed a breathalyzer test which registered a blood alcohol content ("BAC") of 0.131 percent.  (<u>Id.</u> ¶¶ 15-16).  Holloway was charged with driving under the influence ("driving under the influence" or "DUI") of alcohol and speeding in violation of Pennsylvania law.  (<u>Id.</u> ¶ 17).  He successfully completed Pennsylvania's

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."  LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial.  <u>See</u> <u>id.</u>  Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts.  (<u>See</u> Docs. 58-3, 61-1, 72-2, 81).  To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the Rule 56.1 statements of material facts.

Accelerated Rehabilitative Disposition ("ARD") program resulting in dismissal of the charges against him.[3] (Id. ¶ 18; Doc. 58-3 ¶ 4); see also PA. R. CRIM. P. 319.

On January 29, 2005, a police officer witnessed Holloway drive the wrong way down a one-way street and initiated a traffic stop. (Doc. 61-1 ¶¶ 19-20). After Holloway was arrested for suspected drunk driving, the officer administered a breathalyzer test and Holloway registered a BAC of 0.192 percent. (Id. ¶¶ 21-22). Holloway was charged with driving under the influence in violation of 75 PA. CONS. STAT. § 3802(a)(1), and driving under the influence at the highest rate of alcohol (BAC of .16 percent or higher) in violation of 75 PA. CONS. STAT. § 3802(c). (Id. ¶ 23). He pled guilty to driving under the influence at the highest rate of alcohol. (Id. ¶ 24). This 2005 DUI conviction was Holloway's second offense and was graded as a misdemeanor of the first degree. (Id.)

In Pennsylvania, a misdemeanor of the first degree carries a maximum possible sentence of five years' imprisonment. 18 PA. CONS. STAT. § 1104(1). If an individual is convicted of a second DUI offense at the highest rate of alcohol,[4]

---

[3] After dismissing charges pursuant to successful completion of the ARD program, a judge "shall order the expungement of the defendant's arrest record" absent any objection from the government. PA. R. CRIM. P. 320. The Rule 56 record does not indicate whether Holloway's 2002 DUI arrest record was expunged. (See Doc. 78 at 6). Nonetheless, Holloway's 2002 DUI arrest, and subsequent completion of the ARD program, constitutes a "prior offense" for purposes of "grading" future DUI offenses. See 75 PA. CONS. STAT. § 3806(a)(1) (citing 75 PA. CONS. STAT. § 3802); see also id. § 3803.

[4] We refer to Holloway's 2005 DUI conviction as a "second DUI offense at the highest rate of alcohol." This phrasing is used for clarity and ease of reference and is not meant to imply that his first DUI conviction was also at the highest rate of alcohol.

Pennsylvania requires the individual to, *inter alia*, serve no less than 90 days' imprisonment and pay a minimum fine of $1,500. 75 PA. CONS. STAT. § 3804(c)(2)(i)-(iv). Holloway was sentenced to serve 90 days' work release, pay a fine of $1,500, complete any recommended drug and alcohol treatment, and serve 60 months' probation. (Doc. 61-1 ¶ 25). Through the work release program, Holloway reported for work each day and occasionally worked overtime hours but was otherwise confined to the Cumberland County Prison for the remainder of each day. (Id. ¶ 26; see also Doc. 72-1 at 7-8). He completed his sentence in March 2006. (See Doc. 61-1 ¶¶ 25-26).

In September 2016, Holloway attempted to purchase a firearm. (Doc. 61-1 ¶ 28). Holloway's firearm application was denied following an instant background check, and Holloway appealed the denial. (Id. ¶¶ 35, 39; see Doc. 61-2 at 83). The Pennsylvania State Police affirmed the background check results and noted that, pursuant to 18 U.S.C. § 922(g), Holloway's 2005 DUI conviction prohibited him from purchasing a firearm. (Doc. 61-1 ¶ 39; Doc. 58-3 ¶ 18; Doc. 61-2 at 83).

Holloway commenced this litigation asserting an as-applied challenge to 18 U.S.C. § 922(g)(1) under the Second Amendment to the United States Constitution. He seeks a declaration that his 2005 DUI conviction does not justify his disarmament under Section 922(g)(1) as well as a permanent injunction against defendants' continued enforcement of the felon-in-possession ban as pertains him. The court denied defendants' motion to dismiss and dismissed Holloway's first motion for summary judgment as premature. After a period of discovery, the

parties filed cross motions for summary judgment.[5]  The motions are fully briefed

and ripe for disposition.

II.    **Legal Standard**

Through summary adjudication, the court may dispose of those claims that

do not present a "genuine dispute as to any material fact" and for which a jury trial

would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of

proof tasks the non-moving party to come forth with "affirmative evidence, beyond

the allegations of the pleadings," in support of its right to relief.  Pappas v. City of

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most

favorable to the non-moving party and draw all reasonable inferences in that party's

favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This

evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-

57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89

(1986).  Only if this threshold is met may the cause of action proceed.  See Pappas,

331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment

concurrently.  See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see

also Johnson v. Fed. Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A

---

[5] Defendants also moved to dismiss Holloway's claim for lack of Article III standing.  (Doc. 61 at 10-12).  In their reply, defendants acknowledge that Holloway "currently has standing to assert his claims."  (Doc. 78 at 1 n.1).  The court will therefore deny defendants' motion to dismiss.

CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015).  When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.  FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

**III.   Discussion**

Federal law generally prohibits and criminalizes possession of a firearm by any person convicted of "a crime punishable by imprisonment for a term exceeding one year."  18 U.S.C. § 922(g)(1).  Excluded from this ban is any state misdemeanor "punishable by a term of imprisonment of two years or less."  Id. § 921(a)(20)(B). The statute exempts from its prohibition any person whose conviction has been expunged or set aside, who has been pardoned, or who has had his or her civil rights restored.  Id. § 921(a)(20).

A person prohibited from possessing a firearm may bring an as-applied Second Amendment challenge to the statute effecting that ban.  See Binderup, 836 F.3d at 339; id. at 357 (Hardiman, J., concurring in part and concurring in the judgments).  Under the Marzzarella framework endorsed by the Binderup court, an as-applied Second Amendment challenge proceeds in two steps.  Id. at 346 (Ambro, J., plurality opinion) (citing United States v. Marzzarella, 614 F.3d 85, 97 (3d Cir. 2010)); id. at 387 (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments).  At step one, the aggrieved party must first "identify the traditional justifications for excluding from Second Amendment protections the class of which he [or she] appears to be a member," and then present biographical facts that

6

"distinguish his [or her] circumstances from those of persons in the historically barred class." Id. at 347 (Ambro, J., plurality opinion) (citing United States v. Barton, 633 F.3d 168, 173-74 (3d Cir. 2011)); id. at 387 (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments). If the challenger succeeds at step one, the government bears the burden of demonstrating that the challenged regulation "satisfies some form of heightened scrutiny" at step two. Id. at 347 (Ambro, J., plurality opinion) (citing Barton, 633 F.3d at 173-74); id. at 353-56 (Ambro, J., plurality opinion) (citing Marzzarella, 614 F.3d at 97); id. at 397-98 (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments).

Holloway's second DUI offense at the highest rate of alcohol, was punishable by up to five years' imprisonment and therefore falls within the ambit of Section 922(g)(1). See 18 PA. CONS. STAT. § 1104(1); 75 PA. CONS. STAT. § 3803(b)(4). Holloway argues that this conviction is not sufficiently serious to justify annulment of his Second Amendment rights and that defendants have not satisfied intermediate scrutiny at step two. Holloway also challenges the propriety of applying any means-end scrutiny to his as-applied Second Amendment challenge. Defendants rejoin that Holloway has not met his burden at step one and that the proscription of Section 922(g)(1) satisfies intermediate scrutiny because it is reasonably calculated to advance the government's substantial interest in public safety. Holloway seeks declaratory and permanent injunctive relief.

### A. Step One of Marzzarella-Binderup Framework

Historically, persons convicted of a felony could be stripped of their Second Amendment rights because they ostensibly lacked "virtue." Binderup, 836 F.3d at

348-49 (Ambro, J., plurality opinion); see id. at 397-98 (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments). This class of "unvirtuous citizens" who may be deprived of their Second Amendment rights encompasses any individual who commits "a serious criminal offense, violent or nonviolent." Id. at 348 (Ambro, J., plurality opinion). In evaluating whether a crime is so "serious" as to impair Second Amendment rights, courts should consider the following non-exhaustive list of factors: *first*, whether the state offense is classified as a felony or misdemeanor; *second*, whether actual or attempted violence is an offense element; *third*, the severity of the sentence actually imposed; and *fourth*, whether there is cross-jurisdictional consensus on the "seriousness" of the offense. Id. at 351-53 (Ambro, J., plurality opinion). No one factor is dispositive. An offense within the ambit of Section 922(g)(1) is presumptively disqualifying unless the challenger presents a "strong reason" to conclude otherwise. Id. at 351.

## 1. *Binderup Factors*

As previously noted, Pennsylvania punishes a second DUI offense at the "highest rate of alcohol," as a misdemeanor of the first degree. 75 PA. CONS. STAT. § 3803(b)(4). Defendants argue that relying solely on the crime's label "elevate[s] form over substance," (Doc. 61 at 16-17), because Pennsylvania prescribes a maximum possible sentence of five years' imprisonment for a misdemeanor of the first degree, 18 PA. CONS. STAT. § 1104(1). The maximum possible punishment is "certainly probative" of the offense's seriousness, but its classification as a misdemeanor by a state legislature "is a powerful expression of its belief that the offense is not serious enough to be disqualifying." Binderup, 836 F.3d at 351-52

(Ambro, J., plurality opinion). Moreover, in <u>Binderup</u>, the Third Circuit did not find the plaintiffs' respective maximum possible sentences of three and five years to be dispositive. <u>See id.</u> at 340; <u>id.</u> at 351-52 (Ambro, J., plurality opinion).

Notwithstanding defendants' contention that Holloway's crime of conviction was dangerous, under Pennsylvania law, actual or attempted violence is not an element of driving under the influence at the highest rate of alcohol. <u>See</u> 75 PA. CONS. STAT. § 3802(c). The offense is therefore nonviolent, despite its potential for perilous and often tragic outcomes. <u>See</u> <u>Binderup</u>, 836 F.3d at 352 (Ambro, J., plurality opinion). Defendants implicitly concede that this factor weighs in Holloway's favor. (<u>See</u> Doc. 61 at 15).

The parties vigorously dispute the proper weight the court should ascribe to the sentence imposed on Holloway. The government correctly notes that Holloway's sentence was "more severe" than those of the <u>Binderup</u> plaintiffs, neither of whom served any jail time. (Doc. 78 at 4 (quoting <u>Binderup</u>, 836 F.3d at 352 (Ambro, J., plurality opinion))). However, one <u>Binderup</u> plaintiff did receive a suspended sentence of 180 days' imprisonment, reflecting discretionary authority that Holloway's sentencing judge lacked. <u>Compare</u> <u>Binderup</u>, 836 F.3d at 352 (Ambro, J., plurality opinion) <u>with</u> 75 PA. CONS. STAT. § 3804(c)(2)(i). Without discounting the significance of 90 days' imprisonment, Holloway's sentence was relatively minor as compared to both the threshold term of imprisonment of more than one year defined in 18 U.S.C. § 922(g), and the maximum possible punishment of five years' imprisonment he faced under Pennsylvania law. <u>See</u> 18 PA. CONS. STAT. § 1104(1). Holloway's participation in the work release program is of

particular note. (See Doc. 61-1 ¶¶ 25-26). A sentencing judge has discretion to assign an individual convicted of a DUI offense to a daytime work release program. See 75 PA. CONS. STAT. § 3813. Holloway's assignment to such a program undergirds the relatively minor nature of his sentence and suggests that the sentencing judge did not find Holloway to pose a significant risk to public safety.

All 50 states criminalize driving with a BAC of .08 percent or higher. (Doc. 61-1 ¶ 56). But in determining whether a cross-jurisdictional consensus existed as to the seriousness of the offenses at issue in Binderup, the Third Circuit also considered how many states prescribed a maximum sentence that "meet[s] the threshold of a traditional felony (more than one year in prison)."[6] Binderup, 836 F.3d at 352-53 (Ambro, J., plurality opinion). Beyond its uniform illegality, the manner in which a DUI offense is punished varies by state and depends on a multitude of factors. In this case, salient sentencing factors from state to state are the BAC level and the number of prior offenses. Defendants maintain that there is a cross-jurisdictional consensus as to the severity of Holloway's conduct.[7]

---

[6] The Binderup court provided no precise definition as to what constitutes a "cross-jurisdictional consensus." See Binderup, 836 F.3d at 352-53 (Ambro, J., plurality opinion). Nevertheless, for the reasons discussed *infra*, we find that the number of states that punish a second DUI conviction as a serious offense falls well short of a consensus.

[7] In support of their position, defendants assert that "[f]orty-six states punish DUIs as felonies on a first or subsequent conviction." (Doc. 61 at 21). This statement is rather misleading. Not a single state punishes a first DUI offense as a felony, and only three states impose a maximum possible sentence greater than one year's imprisonment. (See Doc. 58-4 at 7-31); see also MASS. GEN. LAWS ANN. ch. 90, § 24(1)(a)(1); N.C. GEN. STAT. ANN. § 20-179(f3); VT. STAT. ANN. tit. 23, § 1210(b).

Holloway's 2005 DUI conviction was his second offense within three years and he had a BAC of .192 percent. For a second DUI offense, 40 states prescribe a maximum term of imprisonment of one year or less. (<u>See</u> Doc. 58-4 at 7-31). Ten states enforce a maximum term of imprisonment of more than one year for a second DUI offense, (<u>id.</u> at 9-10, 13, 15-16, 21-23, 28), only four of which classify the second DUI offense as a felony, (<u>id.</u> at 9, 13, 21, 23). Defendants note that 48 states impose enhanced penalties for DUI offenses when the driver's BAC exceeds a "particularly high threshold." (Doc. 58 ¶ 58; Doc. 61 at 21). These enhanced penalties for elevated BAC levels include increased fines, license suspension, installation of ignition interlock devices, and heightened minimum terms of imprisonment. (<u>See</u> Doc. 58-4 at 7-31). However, only three states increase the maximum possible term of imprisonment above one year for a BAC of .16 or higher during a second offense. (Doc. 58-4 at 12, 24, 26). The government has not shown there is a consensus regarding the seriousness of a generic second DUI offense, let alone a second DUI offense at a high rate of alcohol.

## 2. *Additional Factors*

The parties urge the court to consider two additional factors in evaluating the seriousness of Holloway's offense. Holloway contends that, under Pennsylvania law, he would not be prohibited from owning a firearm after a second DUI offense at the highest rate of alcohol. (Doc. 59 at 13-14). Defendants contend that Holloway's DUI offense evinces a manifest disregard for the safety of others. (Doc. 61 at 22-23). We take these arguments in turn.

Under Pennsylvania law, a person who has three or more DUI convictions within a five-year period is prohibited from transferring or purchasing firearms. 18 PA. CONS. STAT. § 6105(c)(3) (citing 75 PA. CONS. STAT. § 3802). This prohibition does not extend to firearms possessed prior to the third DUI conviction. Id.; see Hamborsky v. Pa. State Police, No. 1359 C.D. 2016, 2017 WL 3122215, at *1 (Pa. Commw. Ct. July 24, 2017). Upon proper application, Pennsylvania courts must grant firearm disability relief after a period of ten years to any person subject to the prohibition of Section 6105(c)(3). 18 PA. CONS. STAT. § 6105(e)(2). In enacting Section 6103(c)(3), it is unclear whether the Pennsylvania General Assembly considered the federal firearms prohibition pursuant to 18 U.S.C. § 922(g), or its interplay with Pennsylvania's DUI offense classification and punishment scheme.[8] Nevertheless, the limited circumstances under which the Commonwealth prohibits DUI offenders from transferring and purchasing new firearms suggests that it views Holloway's offense less seriously than defendants claim.

It is beyond peradventure that driving under the influence of alcohol significantly increases the likelihood of accidents and accident-related fatalities. In 2016 alone, there were over 10,000 fatalities nationwide stemming from alcohol-related driving accidents; 62 percent of drivers in those accidents had a BAC in excess of the legal limit. (Doc. 61-2 at 100). And 67 percent of those 2016 alcohol-related driving fatalities arose from accidents where at least one driver had a BAC of .15 percent or higher. (Id. at 105). A study of 2007 motor-vehicle-accident data

---

[8] Pennsylvania courts presume that the General Assembly is "familiar with extant [state] law" when enacting legislation. Com. v. Zortman, 23 A.3d 519, 525 (2011) (citing White Deer Twp. v. Napp, 985 A.2d 745, 762 (2009)).

revealed that individuals with a BAC of .15 percent or higher were between approximately 112 and 200 times more likely to be involved in any fatal motor vehicle accident depending on the age of the driver. (Doc. 61-3 at 43). Based on these studies, defendants contend that recidivist drunk driving evinces a manifest disregard for the safety of others. (Doc. 61 at 22). The majority of states, including Pennsylvania, require first time DUI offenders to attend a DUI or substance abuse program as part of their sentence, rendering repeat offenses more egregious. (See Doc. 58-4 at 7-31); 75 PA. CONS. STAT. § 3804(a)(1)(iii)-(iv). A second DUI offense, regardless of BAC level, certainly demonstrates maladjustment and a reckless disregard for the safety and well-being of others.

### 3.   *Consideration of All Factors*

After a careful weighing of the <u>Binderup</u> factors, the court concludes that Holloway's crime was not a "serious offense" within the ambit of Section 922(g)(1). A second DUI offense at the highest rate of alcohol, is a misdemeanor under Pennsylvania law and no showing of violence or attempted violence is required for conviction. All states take DUI offenses "seriously" by criminalizing such conduct, but there is no cross-jurisdictional consensus on the seriousness of such an offense. Only a handful of states classify a second DUI offense as a felony or impose a maximum penalty of more than one year imprisonment. Fewer still increase the maximum possible term of imprisonment above one year when the offender drives at a high rate of alcohol (BAC greater than .15 percent). Despite the panoply of penalties available, the sentencing judge chose not to impose a sentence above the

mandatory minimum term of 90 days' imprisonment and permitted Holloway to participate in a work release program.

Defendants' proffered factors do not tip the scales against Holloway. That driving under the influence is risky behavior is undisputed. It places others in danger of bodily harm. Yet only seven states permanently suspend a repeat DUI offender's driving privileges, and only after a third DUI conviction. (See Doc. 58-4 at 7, 10, 19, 22, 24, 28-29). The Commonwealth of Pennsylvania has clearly indicated that a repeat DUI offender is not so unvirtuous that he or she must be disarmed until a third DUI conviction in five years and, even then, the disability has an automatic ten-year expiration date. Holloway has distinguished himself from the class of persons historically barred from possessing a firearm by establishing that his crime of conviction was not sufficiently serious.

**B.      Step Two of <u>Marzzarella</u>-<u>Binderup</u> Framework**

As a threshold matter, Holloway invites the court to reject step two of the <u>Marzarella</u>-<u>Binderup</u> framework entirely as inconsistent with Supreme Court precedent, which purportedly rejects application of any interest balancing to Second Amendment rights. (Doc. 59 at 18-19). He misapprehends the Court's rejection of "judicial interest balancing" as a means to determine the scope of the Second Amendment right. See <u>McDonald v. City of Chicago</u>, 561 U.S. 742, 785 (2010) (citing <u>District of Columbia v. Heller</u>, 554 U.S. 570, 634-35 (2008)). In <u>Heller</u>, the Court critiqued the dissent's application of a "judge-empowering" or "freestanding" interest-balancing inquiry to the "core protection" of an enumerated constitutional right. <u>Heller</u>, 554 U.S. at 634. Moreover, the dissent's proposed

"judicial interest balancing" was distinguishable from the "traditionally expressed levels" of scrutiny—rationale basis, intermediate scrutiny, and strict scrutiny.  Id. The felon-in-possession ban "constrains the rights of persons who, by virtue of their prior criminal conduct, *fall outside the core* of the Second Amendment's protections." Binderup, 836 F.3d at 397-98 (emphasis added) (quoting Heller, 554 U.S. at 635) (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments); see id. at 353-56 (Ambro, J., plurality opinion).  We will therefore apply step two of the Marzzarella-Binderup framework.

At step two, the government bears the burden of establishing that Section 922(g)(1) satisfies intermediate scrutiny.[9] Id. at 353-56 (Ambro, J., plurality opinion); id. at 397-98 (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments).  Section 922(g)(1) survives intermediate scrutiny if the government shows a "substantial fit" between the disarmament of the plaintiff and its compelling interest in "preventing armed mayhem." Id. at 353-56 (Ambro, J., plurality opinion); see also id. at 397-98 (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments).  The government must present "some

---

[9] Holloway argues in the alternative that strict scrutiny should be applied at step two of the Marzarella-Binderup framework.  (See Doc. 59 at 19).  As noted *supra*, the felon-in-possession ban does not impact the core of the Second Amendment's protections, to wit: the right of "law-abiding, responsible citizens" to possess firearms for home defense. Binderup, 836 F.3d at 398 (quoting Heller, 554 U.S. at 635) (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments).  Post Heller, the Third Circuit continues to apply intermediate scrutiny to regulations that do not burden this core Second Amendment right. See id. at 397-98 (citing Drake v. Filko, 724 F.3d 426, 435-36 (3d Cir. 2013); Marzzarella, 614 F.3d at 96-97).  We accordingly reject Holloway's suggestion that strict scrutiny governs his as-applied challenge to Section 922(g)(1).

meaningful evidence, not mere assertions," to substantiate its justification.  <u>Id.</u>
at 354 (Ambro, J.) (citation omitted).

The government has not satisfied its burden of proving that disarmament of
Holloway, and other individuals like him, will promote public safety.  It relies
heavily on an expert report[10] to support the proposition that individuals like
Holloway "are substantially more likely to intentionally use firearms to harm
others, inflict self-harm, and cause inadvertent harm."  (Doc. 61 at 25-27 (citing
Doc. 61-4)).  The expert report states that individuals with alcohol dependency or
abuse are more prone to violence and cites one study that suggests just over 50
percent of DUI offenders were alcohol dependent.  (Doc. 61-4 at 4-5 & n.8).  It
further notes that alcohol abuse is often comorbid with mental illness and is
strongly linked with domestic violence, youth violence, violent crime, and road rage.
(<u>Id.</u> at 6-7).  But nothing in the record suggests that Holloway was ever diagnosed
with or suffered from alcohol dependence, alcohol abuse, or mental illness.
Moreover, the report acknowledges that "it is not possible to determine with
certainty whether these associations are causal."  (<u>Id.</u> at 6).

The report further opines that laws prohibiting "high risk" individuals
from purchasing firearms reduce future violent and firearms-related offenses.  (<u>Id.</u>
at 13-14).  In support of this proposition, the report cites two studies which collected

---

[10] Holloway urges the court to reject the expert report due to various
technical deficiencies including, *inter alia*, the absence of the author's signature and
a list of the author's previous publications.  (Doc. 72 at 2-3).  No ascertainable,
material prejudice accrued from these deficiencies, and we will therefore consider
the report.

data on individuals with at least one prior misdemeanor conviction for a crime of violence. (Id. at 13-14 & n.50) Both studies found that barring said individuals from purchasing firearms reduced the commission of future crimes involving firearms or violence, and intimate partner homicides, respectively. (Id.) Defendants can draw no reasonable conclusion from these studies about the risk posed by Holloway's potential possession of a firearm as his disqualifying misdemeanor was nonviolent.

One study identified by the report found 32.8 percent of handgun purchasers who had prior alcohol convictions were arrested for a subsequent crime involving violence or firearms. (Id. at 9 & n.34) The study's regression analysis revealed that individuals with just one prior alcohol-related conviction were four times as likely to be arrested for a firearm-related offense or a crime of violence. (Id. at 10) The data set utilized by the study consists of persons who purchased a handgun from a California retail firearms dealer in 1977. (Id. at 9) Without questioning the validity of the study's methodology, we find that this study alone does not adequately establish a substantial fit between Holloway's disarmament and the government's compelling interest in preventing armed mayhem.

Holloway contends that the federal government's history of granting relief from federal firearms disabilities to deserving persons undercuts defendants' arguments at step two. Prior to 1993, the United States Attorney General had the authority to grant relief to persons prohibited under federal law from obtaining and possessing firearms. 18 U.S.C. § 925(c). The Attorney General could grant such relief if an applicant "established . . . that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will

not be likely to act in a manner dangerous to public safety." Id.  In 1993, Congress eliminated federal funding for investigations and grants of relief pursuant to Section 925(c).  See United States v. Bean, 537 U.S. 71, 74-75 (2002) (citation omitted).

Holloway points to four individuals with criminal behavior of a more severe character than his, and who received firearm disability relief pursuant to Section 925(c), undermining the government's contention that individuals like Holloway should not retain Second Amendment rights.  (Doc. 59 at 22-26).  At step two of the Marzarella-Binderup framework, the government must show a substantial, not perfect, fit between the disarmament of Holloway and its compelling interest in preventing armed mayhem.  See Binderup, 836 F.3d at 353-56 (Ambro, J., plurality opinion); see also id. at 397-98 (Fuentes, J. concurring in part, dissenting in part, and dissenting in the judgments).  The government's decision to grant such relief to a particular individual does not alone indicate that disarming the class of persons to which that individual belongs fails to promote the responsible use of firearms.  If Congress continued to fund Section 925(c), Holloway might well be a strong candidate for relief.  But we do not find these fact-intensive examples particularly persuasive.

Nevertheless, defendants' evidence fails to account for key characteristics of Holloway and similarly situated persons.  They have presented no evidence

indicating that individuals like Holloway—after over a decade of virtuous,[11] noncriminal behavior—"remain [so] potentially irresponsible" that they should be prohibited from owning a firearm.  See Binderup, 836 F.3d at 356 (Ambro, J., plurality opinion).  The government has not demonstrated a substantial fit between Holloway's continued disarmament and the important government interest of preventing armed mayhem.

### C.    Permanent Injunctive Relief

Our inquiry does not end with a determination that Holloway has prevailed on the merits of his as-applied Second Amendment challenge.  Before the court may grant permanent injunctive relief, Holloway must prove: *first*, that he will suffer irreparable injury absent the requested injunction; *second*, that legal remedies are inadequate to compensate that injury; *third*, that balancing of the respective hardships between the parties warrants a remedy in equity; and *fourth*, that the public interest is not disserved by an injunction's issuance.  See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (citations omitted).

The injury here is irreparable, as the deprivation of a constitutional freedom "for even minimal periods of time, unquestionably constitutes irreparable injury." Mills v. D.C., 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting Elrod v. Burns, 427 U.S. 347, 373-74 (1976) (plurality opinion)); see also 11A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. 2013).  Furthermore, sovereign

---

[11] In the years following his second DUI conviction in 2005, Holloway obtained his bachelor's degree in psychology, worked as an educator with juveniles housed in a residential treatment center, and was not criminally convicted of any state or federal offense.  (See Doc. 58-3 ¶¶ 8-12).

immunity would bar money damages claims against defendants in their official capacities.  <u>Cooper v. Comm'r</u>, 718 F.3d 216, 220 (3d Cir. 2013) (quoting <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976)).  Because there is no adequate legal remedy to compensate Holloway's constitutional injuries, declaratory and injunctive relief will ensure that Holloway does not continue to suffer irreparable harm.

As to the respective hardships between the parties, we fail to ascertain any real hardship defendants would suffer from an award of permanent injunctive relief.  Defendants have identified none, save for their arguments regarding the risk Holloway poses based on his second DUI conviction, which we have squarely addressed.  Holloway, *per contra*, would continue to suffer the Second Amendment injury described in this opinion if a permanent injunction were not granted.  The balancing of hardships thus militates in favor of Holloway's requested injunction.  Finally, we find the public interest is advanced, rather than disserved, by permanently enjoining defendants from continued infringement of a citizen's constitutional rights.  We will grant Holloway's request for permanent injunctive relief.

## IV.   Conclusion

Section 922(g)(1) is unconstitutional as applied to Holloway.  Holloway's disqualifying conviction was not sufficiently serious to warrant deprivation of his Second Amendment rights, and disarmament of individuals such as Holloway is not sufficiently tailored to further the government's compelling interest of preventing armed mayhem.  The court will grant summary judgment, declaratory judgment, and permanent injunctive relief to Holloway.  An appropriate order shall issue.

 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    September 28, 2018